UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON


CIVIL ACTION NO. 11-311-JMH-CJS

JAMES EVERETT GOWANS                                           PETITIONER


v.                         REPORT & RECOMMENDATION


COOKIE CREWS, WARDEN
KENTUCKY STATE REFORMATORY                                     RESPONDENT


\* \* \* \* \* \* \* \* \* \*

On September 28, 2011, Petitioner James Everett Gowans, through counsel, filed a Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus. (R. 1). On December 2, 2011, Respondent filed an Answer (R. 6), to which Petitioner filed a Reply (R. 10). Respondent filed the trial transcript on March 9, 2012. Having all relevant documents and records before the Court, the matter is now ripe for consideration and preparation of a Report and Recommendation. 28 U.S.C. § 636(b). For the reasons set forth below, it is recommended that Petitioner's § 2254 petition be **denied.**

I.      **Background**

On September 9, 2002, Petitioner Gowans was indicted for murder. (R. 6-2). On March 25, 2003, a Fayette County, Kentucky, Circuit Court jury acquitted Gowans of murder, but convicted him of the lesser offense of first-degree manslaughter, which carried a penalty range of ten to twenty years of incarceration. (R. 6-3, 6-4). Pursuant to Kentucky law, the matter proceeded to the penalty phase. K.R.S. § 532.055(2). During the penalty phase, the Commonwealth presented evidence of Gowans's six prior misdemeanor convictions for alcohol-related offenses and operating on a

suspended license.  (R. 17, DVD #3 of state ct. trial, penalty phase held 3/25/03, at 16:55:19).

Gowans's counsel did not present any evidence in mitigation.  (*Id.*).  The jury deliberated for five

minutes before returning with a recommended sentence of twenty years of imprisonment, the

maximum penalty.  (*Id.* at 17:13:19).  On April 18, 2003, the trial court sentenced Gowans consistent

with the jury's recommendation.  (R. 6-3, 6-4).

On direct appeal, the Kentucky Supreme Court, in affirming the conviction and sentence,

recounted the following factual history:

> On the night of June 29, 2002, [Gowans] was with his wife at the Rainbow Tavern
> in Lexington, Kentucky.  Appellant was armed with a handgun that he had borrowed
> from his neighbor to provide protection for himself and his wife.  Paul Payne, the
> victim, entered the bar a few minutes after [Gowans's] arrival.  There was a history
> of altercations between [Gowans] and Payne.  According to [Gowans], when he
> exited the bar's restroom, Payne started shouting at him and moved toward him in
> a threatening manner.  [Gowans] pulled his handgun out of his back pocket and shot
> Payne twice, killing him.

(R. 6-8; *Gowans v. Commonwealth*, No. 2003-SC-0401-MR, 2005 WL 2316194, *1 (Ky. Sept. 22,

2005)).

Gowans raised two issues on direct appeal:  whether the trial court erred in failing to give a

proper "*Allen* charge" and whether it erred in refusing to grant a mistrial based upon the improper

charge.  The Kentucky Supreme Court found the trial court did not error in its instructions to a

purportedly deadlocked jury and in denying the motion for mistrial.  Accordingly, the Kentucky

Supreme Court affirmed the judgment of conviction and sentence imposed by the trial court.  (*Id.*).

Gowans thereafter filed with the trial court a Motion to Vacate, Set Aside, or Correct

Sentence pursuant to Kentucky Rule of Criminal Procedure ("RCr") 11.42, arguing that he received

ineffective assistance of counsel during both the guilt and penalty phases of his trial.  (R. 6-9).  The

trial court[1] denied Gowans's claims of ineffective assistance during the guilt phase, and held an evidentiary hearing on the issue of whether counsel provided ineffective assistance by failing to investigate and present mitigation evidence during the penalty phase.  After an evidentiary hearing, the trial court granted Gowans's RCr 11.42 motion, finding counsel's decision not to investigate or present mitigation evidence was not trial strategy, but a presumption based upon his general experience that mitigation evidence was not effective.  (R. 6-15).  The court further found that there was "a reasonable probability that had mitigation evidence been introduced, or at least evaluated, the result of the sentencing proceeding would have been different."  (*Id*.).

The Commonwealth appealed the trial court's order with respect to its finding that counsel was ineffective during the penalty phase.  On March 19, 2010, the Kentucky Court of Appeals vacated the trial court's order, finding that counsel's decision not to call mitigation witnesses did not constitute ineffective assistance of counsel because it was based on strategy, which is entitled to deference. (R. 6-20; *Commonwealth v. Gowans*, Nos. 2008-CA-807-MR, 2008-CA-948-MR, 2010 WL 985233, at **4-5 (Ky. Ct. App. Dec. 8, 2010)).  The Kentucky Court of Appeals further held that even if Gowans had established that trial counsel's performance was constitutionally deficient, he did not establish the prejudice requirement of *Strickland v. Washington*, 466 U.S. 668 (1984).  *Id*. at **5-6. On December 8, 2010, the Kentucky Supreme Court denied Gowans's motion seeking discretionary review.  (R. 6-23).

Having exhausted his state-court remedies, Gowans filed the present federal Petition for a Writ of Habeas Corpus.  (R. 1).  In his Petition, Gowans argues that his trial counsel provided

---

[1]Judge Roger Crittenden adjudicated Gowans's 11.42 motion and was not the judicial officer that presided over his jury trial.

ineffective assistance of counsel by failing to investigate and present mitigation evidence during the penalty phase of his trial.

## II.    Analysis

Gowans's Petition contains a brief statement that this Court should consider the issues *de novo* because the Kentucky Court of Appeals incorrectly held that counsel's strategic decisions are not the proper basis for habeas relief without first considering the reasonableness of that strategy. (R. 1, at 16). In reaching its decision, however, the Kentucky Court of Appeals discussed the specifics of counsel's decision-making process and considered the reasonableness of counsel's conduct prior to determining that it would not second guess his strategic decisions. (R. 6-8, *Gowans*, 2010 WL 985233, at **5-6). The issues surrounding Gowans's mitigation claim have been adjudicated on the merits in the state-court proceeding,[2] and therefore Gowans's Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).[3] *See Allen v. Lawhorn*, __ U.S. __, 131 S Ct. 562, 563 (2010).[4]

The AEDPA sets forth the substantive standards for granting habeas relief by providing:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

---

[2]Indeed, Gowans's Petition contains an affirmative statement that "[t]he state court adjudicated Mr. Gowans's ineffective assistance of counsel claim on the merits." (R. 1, at 8).

[3]Gowans had asserted that the AEDPA is unconstitutional, but this argument has since been withdrawn. (*See* R. 10).

[4]Even if § 2254(d) did not apply, the Court would also find counsel's conduct did not amount to constitutionally ineffective assistance under a *de novo* review, as it was based upon a reasonable trial strategy.

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "This is a 'difficult to meet,' *Harrington v. Richter*, __ U.S.__, 131 S. Ct. 770, 786 (2011), and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).  Petitioner carries the burden of proof.  *Id*.

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'"  *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (quoting *Williams*, 529 U.S. at 405-06).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at

5

520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.  Under AEDPA, the question for this Court to answer "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

 In his § 2254 Petition, Gowans asserts that he was denied his Sixth Amendment right to the effective assistance of counsel by counsel's failure to investigate and present mitigation evidence during the penalty phase.  Gowans argues that had the jury heard about his service to the community, activities with his church, and general good character it would not have punished him with the maximum sentence.  In support of his argument, Gowans presented six witnesses during a state court evidentiary hearing on his RCr 11.42 motion, and all testified that they were available to present testimony of Gowans's good character during the penalty phase of his trial.  Specifically, the testimony at the state evidentiary hearing established: Gowans often invited the homeless into his restaurant to give them food and a place to warm up; he volunteered twice a week with the Salvation Army delivering bread to the needy; he performed maintenance work for his church and the Masonic Lodge; he held fish fries at his restaurant for an after-school program; and he helped friends in need. (R. 8, DVD of state ct. 11.42 evidentiary hearing held 12/13/2007).  Gowans argues that the evidence presented during the evidentiary hearing establishes that the decision of the Kentucky Court of Appeals, finding that counsel's decision not to investigate and present mitigation evidence was a strategic decision and not a proper basis for habeas relief, was "contrary to" and an "unreasonable application" of Supreme Court precedent.  (R. 1).

 It is undisputed that the clearly established law for analyzing ineffective assistance of counsel claims is *Strickland*, 466 U.S. at 668.  In *Strickland*, the Supreme Court states that to prevail on a

claim of ineffective assistance of counsel, a party must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Id*. at 687. The first prong of this test requires showing that defense "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The second prong requires showing "a reasonable probability that, but for [trial] counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

The Kentucky Court of Appeals applied *Strickland* to Gowans's claim and concluded he was not deprived of the effective assistance of counsel. The Court stated:

> Our review of the RCr 11.42 hearing record reveals that a number of witnesses, in fact, stated that they would have testified at trial on behalf of Gowans' character. Witnesses stated that he was active in his church and community and that he had provided support and assistance to numerous people, including the homeless. Additionally, Gowans' wife testified that she had attempted to present Gowans' trial attorney with a letter from the Salvation Army which commented on Gowans' work in the community.

> As recognized by the trial court, Gowans' trial attorney acknowledged he holds a general trial philosophy that mitigation evidence in the penalty phase can do more harm than good. Trial counsel recalled the possible mitigation evidence involved Gowans' work with his church and community service. Counsel, however, also testified that in this specific case, his discussion of mitigation evidence with Gowans included the pros and cons of presenting such evidence. Trial counsel stated that trial strategy during the guilt phase had been to portray the victim to the jury as the "bad guy" who had terrorized Gowans, but that the history between Gowans and the victim was not one-sided. Trial counsel felt the guilt phase verdict was a "good result" given the evidence and was fearful that calling mitigation witnesses would allow the Commonwealth to present the evidence involving Gowans' prior bad acts, specifically kicking in a door looking for the victim while armed, and putting a gun to a person's head. Trial counsel stated he "didn't want to talk about that any more than necessary." While Gowans argues that this evidence had already been introduced in the guilt phase, trial counsel's statement is not inconsistent with Gowans' position. Trial counsel's testimony distinguishes this case from one in which trial counsel relied only on a personal trial philosophy when deciding not to call mitigation witnesses.

Under the first part of the *Strickland* test, pertaining to whether trial counsel's performance was deficient, the strategic decisions of counsel are not the basis of relief under RCr 11.42. *Parrish v. Commonwealth*, 272 S.W.3d 161, 170 (Ky. 2008) (stating that "an RCr 11.42 motion is not an exercise in second-guessing counsel's trial strategy[ ]"); *Sanders [v. Commonwealth]*, 89 S.W.3d [380, 390 (Ky. 2002) (overruled on other grounds)] (noting that "[t]he decision as to whether or not to call family members as mitigation witnesses is a strategic one which will not be second-guessed by hindsight"); *Harper v. Commonwealth*, 978 S.W.2d 311, 317 (Ky. 1998) (holding that "[o]n review, as a court far removed from the passion and grit of the courtroom, we must be especially careful not to second-guess or condemn in hindsight the decision of defense counsel. A defense attorney must enjoy great discretion in trying a case, especially with regard to trial strategy and tactics[ ]"). Based on trial counsel's testimony, we conclude that the trial court's findings and conclusion that trial counsel was ineffective in the penalty phase due to his failure to call mitigation witnesses were clearly erroneous, and must be vacated.

*Gowans*, 2010 WL 985233, at **4-5 (footnote omitted).

The question before this Court on habeas review is whether the Kentucky Court of Appeal's application of *Strickland* was reasonable. 28 U.S.C. § 2254(d)(1); *Harrington,* 131 S. Ct. at 785-86 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.").

Gowans argues that in *Strickland*, and subsequent cases applying *Strickland*, the Supreme Court has held that the mere fact a counsel's conduct was based on strategy does not foreclose a finding that counsel acted in a constitutionally ineffective manner. *Strickland,* 466 U.S. at 690-91; *see, e.g., Sears v. Upton*, __ U.S. __, 130 S. Ct. 3259, 3265 (2010); *Wiggins*, 539 U.S. at 533-35 (counsel not in position to make reasonable strategic choices regarding mitigation where investigation itself was unreasonable); *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000) ("The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."). Petitioner is correct. The Supreme Court has explained that

strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less

8

than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 690-91.

Here, the evidence presented at the state evidentiary hearing does not support a finding that counsel's strategic decision was unreasonable. Gowans presented six witnesses at the evidentiary hearing who all testified they were not contacted by counsel but would have been available to testify at trial about Gowans's community service, church activities, generous nature and overall good character. Gowans's wife testified that she told counsel she had a letter from the Salvation Army that explained his work delivering bread to the needy. Counsel allegedly told her he did not need the letter at that time, but would contact her if he did need it. (R. 8, DVD of state ct. 11.42 evidentiary hearing held 12/13/2007).

Counsel testified that while he could not recall the specific mitigation evidence that was available, his memory was that it was basic character evidence such as church attendance. He also testified that he did not think mitigation evidence of good character was generally effective if the government could simply counter with evidence of bad acts. Gowans testified that counsel briefly asked him about his community service, but counsel recommended they should "keep everything on the down low," not call any witnesses, stating "we can handle it." (*Id*. at 2:45). This is consistent with counsel's statement that although he did not have a specific recollection of this case, his practice is to discuss his views on mitigation with the client, and let the client make the decision.

(*Id*. at 2:18).  Counsel explained if Gowans had asked him to call mitigating witnesses he would have done so.  (*Id*.)

Counsel also explained that he did not call mitigation witnesses because part of his strategy during the guilt phase was to demonstrate to the jury that Gowans was being honest with them, not hiding anything.  Counsel was concerned that the Government would cross-examine any mitigation witness about Gowans's prior bad acts toward the victim as well as his prior drug felonies, thus undermining the jury's apparent good impression of Gowans over that of the victim.  Counsel also explained that he thought the verdict was a good outcome, which indicated that the jury believed their theory that the victim was a bad guy who had been harassing Gowans and his family.  Counsel indicated he wanted the jury to quickly enter sentencing deliberations without further evidence of Gowans's bad conduct and while the jury was perceiving the victim as the bad guy.

This matter is distinguishable from the cases cited by Gowans where counsel was unaware of the available mitigation evidence because of an inferior investigation.  *See Sears*, 130 S. Ct. at 3265; *Wiggins*, 539 U.S. at 533-35.  Here, counsel made a conscious choice not to investigate further or present the mitigation evidence of Gowans being a church goer and overall friend to the community because he viewed it as a risk that the Government would cross-examine the witnesses regarding Gowans's prior bad conduct and felony convictions.  Gowans argues that counsel's decision not to investigate or call mitigation witnesses was not a reasonable strategy, given that the bad acts evidence had already been presented to the jury during the guilt phase and Kentucky law permits the introduction of prior felony convictions during the sentencing stage.  As counsel explained, however, he was trying to limit the repeat evidence of Gowans's bad acts toward the

victim, and Gowans admitted that they had been successful in keeping from the jury evidence of his prior drug felony convictions.[5]

This is not a case where counsel did no mitigation investigation at all; Gowans testified that counsel asked him about possible character evidence during their trial preparation.[6] In addition, Gowans's wife had made him aware of the availability of the letter regarding his volunteer work delivering bread for the Salvation Army. The Court must "eliminate the distorting effects of hindsight." *Strickland*, 466 at 689. "Because 'there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight. . . .'" *Campbell v. Bradshaw*, 674 F.3d 578, 588 (6th Cir. 2012) (quoting *Harrington*, 131 S. Ct. at 791). The evidence presented to the state court supports a finding that counsel decided, after consultation with his client, that evidence of his good character was not worth risking another opportunity for the jury to hear of Gowans's bad acts or risk the possibility of their learning of his prior drug felonies, especially in light of the favorable verdict that indicated the jury

---

[5]Gowans argues that the reason the Commonwealth did not tell the jury about his prior felony convictions was because the Commonwealth was unaware of them, citing to the Commonwealth's closing argument at the RCr 11.42 hearing. A review of that proceeding, however, reveals that counsel for the Commonwealth did not say the Commonwealth was unaware of the prior felonies, but that no evidence of the convictions was introduced at trial because they were old convictions from the federal system and the records were not able to be obtained. (R. 8, DVD of state ct. 11.42 evidentiary hearing held 12/13/2007 at 3:48).

[6]Gowans argues that the Kentucky Court of Appeals did not disturb the trial court's factual finding that trial counsel failed to investigate potential mitigating witnesses. (R. 1, at 17-18; R. 10, at 3-4). However, the Court of Appeals stated: "Trial counsel recalled the possible mitigation evidence involved Gowans's work with his church and community service. Counsel also testified that in this **specific case**, his discussion of mitigation evidence with Gowans included the pros and cons of presenting such evidence." *Gowans*, 2010 WL 985233, at *5 (emphasis added). Further, the Court of Appeals concluded that "[b]ased on trial counsel's testimony, . . the trial court's findings and conclusion that counsel was ineffective in the penalty phase due to his failure to call mitigation witnesses were clearly erroneous." *Id*. Thus, the Kentucky Court of Appeals did not adopt the trial court's factual findings, as Gowans suggests. To the contrary, the Court held that the trial court's findings on the issue were clearly erroneous.

favored Gowans over the victim.  Thus, counsel's decision not to further investigate or to call mitigating witnesses was supported by reasonable professional judgment.[7]  The decision of the Kentucky Court of Appeals in this regard was neither contrary to nor an unreasonable application of *Strickland* or its progeny.

Moreover, the Kentucky Court of Appeals further found that even if Gowans had established that counsel's performance was deficient, he had not met the second prong of *Strickland*, stating:

> In addition, even if Gowans had established that trial counsel's performance was deficient, our view is that Gowans failed to satisfy the second aspect of the *Strickland* test, i.e., whether a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *See Slaughter v. Parker*, 450 F.3d 224, 234 (6th Cir. 2006) (holding that notwithstanding counsel's deficient performance in investigating and preparing for the penalty phase of trial, defendant failed to show reasonable probability that result would have been different).  As noted, a reviewing court must review the entirety of the proceedings before the trial court in making this determination.  *Simmons*, 191 S.W.3d at 561.

> In this case, Gowans admitted that he had shot and killed the victim.  The jury, as discussed above, was initially unable to reach a verdict and did so only after inquiry by the trial court.  During the penalty phase, not only did Gowans' counsel argue for the minimum, but the Commonwealth asserted that although the minimum sentence was inappropriate, Gowans' lack of a lengthy violent record indicated that he was "not the guy who should get the maximum."  Notwithstanding this statement, the jury deliberated for less than five minutes during the penalty phase before recommending the maximum of twenty years.  The effect of the mitigation evidence of the sort proposed by Gowans on his sentence is purely speculative.  *See Slaughter*, 450 F.3d at 235.  When the entire record of Gowans' trial is examined, the trial court clearly erred by determining, after the evidentiary hearing, that "there is a reasonable

---

[7]Gowans argues that counsel's reliance on a favorable verdict does not justify counsel's failure to investigate possible mitigation evidence because counsel could not have known that the jury would return with a manslaughter verdict and should have been prepared whatever the verdict.  As stated above, however, when facts are generally known to counsel because of what Defendant has told him, the need for further investigation may be diminished or eliminated altogether.  *See Strickland*, 466 U.S. 691; *Burger v. Kemp*, 483 U.S. 776, 795 (1987).  It is undisputed that counsel was aware of Gowans's church attendance and work with the Salvation Army.  This information provided him with general knowledge of the type of evidence available should he decide to present mitigation evidence.  In addition, counsel knew that Petitioner and his wife, both of whom had testified during the guilt phase, were available to present mitigation evidence of Gowans's good works had they decided it was necessary.

probability that had mitigation evidence been introduced, or at least evaluated, the result of the sentencing proceeding would have been different.

*Gowans*, 2010 WL 985233, at ** 5-6.

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different . . . A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "[T]he question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 131 S. Ct. at 791-92 (citing *Wong v. Belmontes*, __ U.S. __, 130 S. Ct. 383, 390 (2009); *Strickland*, 466 U.S. at 693). Instead, the proper inquiry is whether it is "reasonably likely" that the result would have been different. *Id*. "The likelihood of a different result must be substantial, not just conceivable." *Id*.

Thus, to satisfy the prejudice prong, Gowans must establish "a reasonable probability that a competent attorney, aware of [the available mitigating evidence], would have introduced it at sentencing," and "that had the jury been confronted with this . . . mitigating evidence, there is a reasonable probability that it would have returned with a different sentence." *Wong*, 130 S. Ct. at 386 (quoting *Wiggins*, 539 U.S. at 535-36). When assessing prejudice, the Court must weigh the evidence available in mitigation against the aggravating evidence. *Id*.

Here, Gowans argues that had the jury heard evidence of his good character they would not have returned with the maximum sentence. The Court must consider the evidence that would have been presented by the Government had counsel introduced mitigation witnesses. *Wong*, 130 S. Ct. at 386. The proposed mitigation witnesses, particularly his wife, most certainly would have been subjected to cross-examination that likely would have included questions regarding Gowans's

13

alcohol use, his bad acts toward the victim, his lack of remorse, and his prior criminal history. This evidence, in addition to being adverse to evidence of his good character, could well have revealed Gowans's prior incarceration and felony convictions to the jury for the first time.

In addition, as the Kentucky Court of Appeals noted, the jury returned the maximum sentence despite the prosecutor stating in his closing argument that this is not a case that deserves the maximum or the minimum sentence. The fact that the jury returned with the maximum sentence after only five minutes of deliberation, even after the prosecutor's statement that the maximum sentence was not warranted, is just as suggestive that the jury would not have been swayed by evidence of Gowans's church attendance and volunteer work as the trial court's conclusion that a jury would have been so swayed. Considering the evidence, it was not unreasonable for the Kentucky Court of Appeals to find that Gowans's did not establish that there was a reasonable probability that the outcome of the proceeding would have been different even had counsel presented the mitigation evidence.

For the foregoing reasons, the decision of the Kentucky Court of Appeals was neither an unreasonable application of, nor contrary to, established Supreme Court precedent. Therefore, Gowans's claims of ineffective assistance of counsel fail.

### III.    Certificate of Appealability

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Proceedings, effective December 1, 2009, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. A certificate may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a

constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of Petitioner's § 2254 motion or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is recommended that a certificate of appealability be **denied** upon the District Court's entry of its final order in this matter.

### IV.    Conclusion and Recommendation

For the reasons stated herein, **IT IS RECOMMENDED** that:

(1)    Petitioner Gowans's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus (R. 1) be **denied;**

(2)    A Certificate of Appealability be **denied** by the District Court in conjunction with the Court's entry of its final order in this matter; and,

(3)    This action be **stricken** from the active docket of this Court.

Specific objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2);

*Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd,* 474 U.S. 140, 155 (1985).  A general objection

that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written

and specific objection.  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y*

*of Health & Human Servs.,* 932 F.2d 505, 508-09 (6th Cir. 1991)).  Poorly drafted objections, general

objections, or objections that require a judge's interpretation should be afforded no effect and are

insufficient to preserve the right of appeal.  *Howard*, 932 F.2d at 509.  A party may respond to

another party's objections within fourteen (14) days of being served with a copy of those objections.

Fed. R. Civ. P. 72(b)(2).

Dated this 12th day of June, 2012.

**Signed By:**

**_Candace J. Smith_**

**United States Magistrate Judge**

G:\DATA\habeas petitions\2254 General\11-311 gowans R&R.wpd

16