UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| JAMES EVERETT GOWANS, ) | |
| ) | |
| Petitioner, ) | |
| ) | Civil Case No. 11-311-JMH-CJS |
| v. ) | |
| ) | |
| COOKIE CREWS, Warden, et al., ) | |
| ) | **MEMORANDUM OPINION & ORDER** |
| Defendants. ) | |

\*\*\*

This matter is before the Court on the Report and Recommendation of Magistrate Judge Candace J. Smith [DE # 18]. Said action was referred to the magistrate for the purpose of reviewing the merit of Petitioner's Petition for a Writ of Habeas Corpus [DE # 1] pursuant to 28 U.S.C. § 2254, challenging his conviction in a Kentucky state court. In her Report and Recommendation, Magistrate Judge Smith recommends that the Petition for Writ of Habeas Corpus should be denied. Petitioner has filed an Objection to the Report and Recommendation [DE # 21]. For the reasons which follow, based on a *de novo* review of the record, the Court accepts the Report and Recommendation, and the Petition shall be dismissed.

**I. Background**

On the evening of June 29, 2002, Petitioner Gowans was with his wife at the Rainbow Tavern in Lexington, Kentucky. Gowans was armed with a handgun that he had borrowed from his neighbor

in order to protect himself and his wife. A few minutes after Gowans' arrival, Paul Payne, with whom Gowans had a history of altercations, entered the bar. According to Gowans, Payne started shouting at him and moved toward him in a threatening manner after he exited the bar's restroom. Gowans pulled the handgun out of his back pocket and shot Payne twice, killing him.

Gowans was indicted for murder on September 9, 2002. On March 25, 2003, a Fayette Circuit Court jury acquitted Gowans for murder but convicted him of the lesser offense of first-degree manslaughter, which carried a penalty range of ten to twenty years of incarceration. During the penalty phase of the trial, the Commonwealth presented evidence of Gowans' six prior misdemeanor convictions for alcohol-related offenses and operating a vehicle on a suspended license. Gowans' counsel did not present any evidence in mitigation. The jury then returned a recommended sentence of twenty years of imprisonment, the maximum penalty, after only five minutes of deliberation. On April 18, 2003, the trial court sentenced Gowans consistent with the jury's recommendation.

On direct appeal, Gowans raised two issues: whether the trial court erred in failing to give a proper "*Allen* charge" and in refusing to grant a mistrial based upon the improper charge. The Kentucky Supreme Court affirmed the judgment of conviction

and sentence imposed by the trial court, finding that the trial court did not err in its instructions to a purportedly deadlocked jury and in denying the motion for a mistrial.

Gowans then filed a Motion to Vacate, Set Aside, or Correct sentence with the trial court, pursuant to Ky. Cr. R. 11.42, arguing that he received ineffective assistance of counsel during both the guilt and penalty phases of his trial. The trial court denied Gowans' claims of ineffective assistance during the guilt phase and held an evidentiary hearing with respect to the claim of trial counsel's failure to investigate and present mitigation evidence during the penalty phase. During the evidentiary hearing, Gowans presented six witnesses who testified that they were available to present testimony of his good character during the penalty phase of the trial. The testimony was that Gowans invited the homeless into his restaurant to give them food and a place to warm up, volunteered twice a week with the Salvation Army, performed maintenance work for his church, held fish fries at his restaurant for an after-school program, and helped friends in need.

The trial court granted Gowans' motion, finding that counsel's decision not to investigate or present mitigation evidence was not trial strategy, but a presumption based upon his general experience, and that there was a reasonable probability that, had mitigation evidence been introduced or at

least evaluated, the result of the sentencing proceeding would have been different.

The Commonwealth appealed and the Kentucky Court of Appeals vacated the trial court's order, finding that counsel's decision not to call mitigation witnesses did not constitute ineffective assistance of counsel because it was based on trial strategy, which is entitled to deference. *Commonwealth v. Gowans*, Nos. 2008-CA-807-MR, 2008-CA-948-MR, 2010 WL 985233, at **4-5 (Ky. Ct. App. Dec. 8, 2010). Further, the Kentucky Court of Appeals held that even if Gowans had established that trial counsel's performance was constitutionally deficient, he did not establish the prejudice requirement of *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at **5-6. On December 8, 2010, the Kentucky Supreme Court denied Gowans' motion for discretionary review.

Having exhausted his state-court remedies, Gowans filed a federal Petition for Writ of Habeas Corpus. [DE # 1]. In his Petition, Gowans asserts that he was denied his Sixth Amendment right to the effective assistance of counsel because trial counsel failed to investigate and present mitigation evidence during the penalty phase of his trial. Gowans avers that the evidence presented during the evidentiary hearing establishes that the decision of the Kentucky Court of Appeals, finding that trial counsel's decision not to investigate and present mitigation evidence was a strategic decision and not a proper

basis for habeas relief, was "contrary to" and an "unreasonable application" of Supreme Court precedent.

   II. **Analysis**

      **A. Report and Recommendation Applied the Correct Standard of Review**

Considering Gowans' Objections in order, he first objects to the Magistrate Judge application of a "highly deferential" standard of review to the Kentucky Court of Appeals ruling on deficient performance of trial counsel because the state court's ruling was "contrary to" clearly established federal law under § 2254. Thus, he argues, a de novo review was appropriate as taught in *Magana v. Hofbauer*, 263 F.3d 542, 551 (6th Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. 362, 396-98 (2000)). I agree, however, with the Magistrate Judge that the ruling was not "contrary to" clearly established law even if it was less than artfully stated in the state appellate court's opinion and, thus, the inquiry was into whether there was an "unreasonable application" of the law. The Magistrate Judge, it follows, applied the proper, "highly deferential" standard of review.

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). Section 2254(d) applies to Gowans'

Petition because the issues surrounding his mitigation claim were adjudicated on the merits in state-court proceedings. The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "This is a difficult to meet . . . and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt[.]" *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011) (quoting *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 786 (2011) and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)) (internal quotation marks omitted)). Petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement." *Harrington*, 131 S. Ct. at 788-87. The petitioner carries the burden of proof. *Id.* at 785-86 .

"The 'contrary to' and 'unreasonable application' clauses have independent meaning." *Williams*, 529 U.S. at 405. A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule that contradicts the governing law set forth by the Supreme Court, or if it decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Id.* "Avoiding these pitfalls does not require citation of [Supreme Court] cases—indeed it does even require awareness of [these] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case. *Williams*, 529 U.S. at 409-10. "[F]or a federal court to find a state court's application of [Supreme Court] precedent unreasonable, the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) and *Williams*, 529 U.S. at 409). Thus, the Supreme Court stresses that an

"unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams*, 529 U.S. at 409-410).

The merits of Gowans' ineffective assistance of counsel claim are governed by the Supreme Court's holding in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on his ineffective assistance of counsel claim, Gowans had to show (1) that trial counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. The first prong of the *Strickland* test requires showing that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In applying the *Strickland* test, "[j]udicial scrutiny of counsel's performance must be highly deferential[,]" and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689.

Petitioner argues that the Court of Appeals opinion merely recited the testimony of the trial counsel regarding his mitigation strategy before concluding that, "[u]nder the first part of the *Strickland* test, pertaining to whether trial counsel's performance was deficient, the strategic decisions of counsel are not the basis of relief under RCr 11.42," *Gowans*, 2010 WL 985233 at *5. Petitioner contends that this conclusion

is a "rule" insofar as it purports to forbid analysis of the trial counsel's strategic decisions and that it is therefore contrary to the clearly established law in *Strickland*. It is true that the fact that a decision was "strategic" does not end foreclose inquiry into its reasonableness. *Strickland*, 466 U.S. at 690-91 (the mere fact a counsel's conduct was based on strategy does not foreclose a finding that counsel acted in a constitutionally ineffective manner); see, e.g., *Sears v. Upton*, __ U.S. __, 130 S. Ct. 3259, 3265 (2010); *Wiggins*, 539 U.S. at 533-35; *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000) ("[t]he relevant question is not whether counsel's choices were strategic, but whether they were reasonable."). This is not, however, what happened in this case, and Petitioner's objection is not well taken.

The Magistrate Judge found that the Court of Appeals, in reaching its decision, discussed the specifics of counsel's decision-making process and considered the reasonableness of counsel's conduct prior to determining that it would not second guess his strategic decisions [DE # 23 at 4]. Indeed, because the Court of Appeals discussed counsel's penalty phase investigation and decision-making before reaching its conclusion, the Court of Appeals did not *foreclose* a finding that counsel acted in a constitutionally ineffective manner simply because he engaged in strategic decision making at that

stage of the trial. Nor does the state court's failure to employ *Strickland's* formulary "reasonableness" language during its analysis suggest that it did. Rather, in evaluating conclusion was reached by the state appellate court, this Court looks to the fair import of the state appellate court's opinion. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam) (noting that compliance with requirement that reviewing court consider allegedly coercive supplemental jury charge under the totality of the circumstances did not demand the formulary statement that trial court's actions and inactions were noncoercive "individually and cumulatively", rather, it sufficed that it was the fair import of the reviewing court's opinion)).

First, the state appellate court noted that Gowans' trial attorney held a general trial philosophy that mitigation evidence in the penalty phase can do more harm than good. In light of the circumstances, counsel's philosophy apparently applied to the instant case. According to the court, counsel recalled that possible "good character" mitigation evidence involved Gowans' work with his church and community service. Counsel testified that his trial strategy during the guilt phase had been to portray the victim to the jury as the "bad guy" who had terrorized Gowans. *Gowans*, 2010 WL 985233 at *5. Counsel's strategy produced what could be considered a favorable verdict considering that Gowans' history with the victim was not one-

sided. Trial counsel was fearful that calling mitigation witnesses would allow the Commonwealth to present evidence involving Gowans' prior bad acts, which included kicking in a door while armed and looking for the victim and putting a gun to a person's head. Trial counsel did not want to talk about that "any more than necessary." *Id.* The court noted that "[w]hile Gowans argues that this evidence had already been introduced in the guilt phase, trial counsel's statement [was] not inconsistent with Gowans' position." *Id.*

Second, the court emphasized that counsel's testimony "distinguishes this case from one in which trial counsel relied only on personal trial philosophy when deciding not to call mitigation witnesses." *Id.* Counsel testified that the mitigation evidence Gowans presented was basic character evidence such as church attendance and community service. Moreover, Gowans concedes that counsel briefly asked him about his community service but recommended that they should "keep everything on the down low" and not call any mitigation witnesses. It was not unreasonable for the court to conclude that counsel's decisions were consistent with reasonable trial strategy based on investigation under *Strickland*.

Certainly, the Kentucky Court of Appeals stated that "the strategic decisions of counsel were not the basis of relief under Ky. Cr. R. 11.42." *Gowans v. Commonwealth*, 2010 WL 985233,

at *4-5 (citing *Parrish v. Commonwealth*, 272 S.W.3d 161 (Ky. 2008); *Sanders v. Commonwealth*, 89 S.W.3d 380 (Ky. 2002); *Harper v. Commonwealth*, 978 S.W.2d 311 (Ky. 1998)). However, it was the import of the state appellate court's conclusion that counsel's decisions were "reasonable" under *Strickland* because they were consistent with trial strategy based on investigation under the circumstances. *Id.* at *5. Specifically, the state appellate court's reasoning stemmed from the fact that, as recognized by the trial court in the proceeding under Ky. Cr. R. 11.42, counsel made a conscious choice not to investigate further or present mitigation evidence concerning Gowan's perceived "good acts" because of the risk that the government would cross-examine the witness concerning prior bad conduct and felony convictions.

Petitioner failed to overcome the presumption that trial counsel's decision not to present mitigation evidence during the penalty phase might be considered sound trial strategy. The state court of appeals' application of *Strickland* and its determination that counsel's decision not to present mitigation evidence constituted sound trial strategy is not "contrary to" *Strickland* and its progeny. *See Strickland*, 466 U.S. at 690-91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than

complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation"). It follows that the Magistrate Judge was correct in applying the highly deferential standard required by § 2254.

### B. Decision That Counsel's Conduct Was Reasonable Did Not Involve An Unreasonable Application of *Strickland*.

Petitioner also objects to the Magistrate Judge's conclusion that the Kentucky Court of Appeals decision on the first prong of the *Strickland* analysis did not involve an unreasonable application of clearly established federal law. Specifically, Petitioner argues that trial counsel's decision not to further investigate and/or call mitigating witnesses was both contrary to and an unreasonable application of *Strickland* and its progeny. We find, however, that it is at least arguable that a reasonable attorney could decide to forgo further investigation and presentation of mitigation evidence under the circumstances presented in this case. Consequently, we agree with the Magistrate Judge's conclusion.

The pivotal question is whether the state court's application of *Strickland* was unreasonable. *Harrington*, __ U.S. __, 131 S. Ct. 770, 785 (2011) (explaining that § 2254 requires that a habeas court do more than conduct a *de novo* review to find a *Strickland* violation; a habeas court has to determine

what arguments supported, or could have supported, the state court's decision and then ask whether it is possible fairminded jurists could disagree that those arguments are inconsistent with Supreme Court precedent). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* (holding that even a strong case for habeas relief does not mean the state court's contrary conclusion was unreasonable).

Counsel did not call mitigation witnesses because he was concerned that the Government would cross-examine mitigation witnesses about Gowans' prior bad acts toward the victim and his drug felonies, thus undermining the jury's apparently good impression of Gowans when compared with the victim. Considering the potentially damaging evidence of Gowans' bad acts, it would have been altogether reasonable for the Court of Appeals to conclude that this concern justified the course that trial counsel pursued. Gowans argues that this "counter" evidence of his bad acts with which trial counsel was primarily concerned had already been heard by the jury at length, but Gowans concedes that trial counsel had successfully kept evidence of his prior drug felony conviction from the jury. Further, it is conceivable that evidence of bad acts not presented to the jury earlier could be extracted from the witnesses during penalty phase cross-examinations. Trial counsel testified that it was

his experience was that mitigation evidence does little good, and, that once the jury found guilt on the lesser charge, the sentence was a foregone conclusion. *Gowans*, 2010 WL 985233 at *4. After receiving what could be considered favorable verdict on the facts and in light of the possible verdicts, it was not unreasonable for counsel to want the jury to quickly enter sentencing deliberations while still perceiving the victim as the bad guy when compared with Petitioner.

Gowans argues that reasoned professional judgment does not support a strategy of not interviewing mitigation witnesses in preparation for trial while simultaneously waiting to decide on whether to present the mitigation witnesses until after the jury returned its verdict, yet this is not the strategy that counsel employed. Counsel does not contend that his strategy was to decide whether to present mitigation evidence after the jury returned its verdict, and the Court of Appeals did not base its decision on that belief. The court merely inferred that trial counsel's strategies had been generally effective because Gowans received a favorable verdict.

Had he been convicted for murder, Gowans argues that trial counsel would have had only minutes prior to the penalty phase during which to prepare mitigation evidence. While Gowans is correct, it was still reasonable for counsel to conclude that he would not present any mitigation evidence during the penalty

phase – even if his client was convicted of murder – because the risk of adverse evidence was too great. *Harrington*, 131 S. Ct. at 790 (there is a strong presumption that counsel's attention to minimizing the impact of defendants' bad acts to the exclusion of presenting evidence of his good character during the penalty phase reflects trial tactics rather than sheer neglect); *see also Strickland*, 466 U.S. at 689 ("it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable").

Finally, counsel testified that he discussed the pros and cons of presenting mitigation evidence with Gowans and explained that if Gowans had asked him to call mitigating witnesses, he would have done so. This information supports the state court of appeals' conclusion that counsel's decision not to continue investigation of potential mitigation evidence was reasonable. *See Strickland*, 466 U.S. at 691 ("when a defendant gives counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable").

For the foregoing reasons, I concur with the Magistrate Judge that, because there are "reasonable argument[s] that counsel satisfied Strickland's deferential standard," *Harrington*, 131 S. Ct. at 788, the Kentucky Court of Appeals

decision did not involve an unreasonable application of clearly established federal law.

### C. Determination That Defendant Was Not Prejudiced By Counsel's Conduct Was Reasonable

Finally, Petitioner objects to the Magistrate Judge's conclusion that the state court determination regarding the prejudice prong of *Strickland* was reasonable. Petitioner contests the state court's ruling that positive mitigation evidence's impact upon a jury's decision on sentencing is "purely speculative" and avers that this ruling involves an unreasonable application of clearly established federal law under § 2254(d)(1).

To establish prejudice, the Petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* When assessing prejudice, the court must weigh any aggravating evidence against the available mitigation evidence. *Wiggins*, 539 U.S. at 535. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 131 S. Ct. at 792-93 (citing *Wong v. Belmontes*, __ U.S. __, 130 S. Ct. 383, 390 (2009); *Strickland*, 466 U.S. at 693).

I agree with the Magistrate Judge that Petitioner failed to show a reasonable probability that the result of the proceeding would have been different had mitigation evidence been presented. Gowans admitted that he shot and killed the victim. The jury was initially unable to reach a verdict and did so only after inquiry by the trial court. Gowans' counsel argued for the minimum during the penalty phase, and the Commonwealth admitted that Gowans' lack of a lengthy violent record indicated that he was "not the guy who should get the maximum." Regardless, the jury deliberated for less than five minutes before recommending the maximum twenty year period. Based on this information, the Court of Appeals concluded that the effect of the mitigation evidence proposed by Gowans was "purely speculative" and that the likelihood of a different outcome was not substantial.

Gowans avers that had the jury heard evidence of his good character, they would not have returned with the maximum sentence. When considering the effect of this evidence of good character, the Court must also consider the evidence that would have been presented by the Government had counsel introduced mitigation witnesses. *Wong v. Belmontes,* 558 U.S. \_\_, 130 S. Ct. 383, 389 (2009) (*per curiam*) (taking into account that presentation of certain mitigating evidence may expose the petitioner to further aggravating evidence). As discussed, there is a risk that cross-examination of the proposed witnesses,

particularly Gowans' wife, would have revealed evidence about Gowans' prior incarceration and felony convictions to the jury for the first time. Additionally, while the jury had previously heard about Gowans' other bad acts, it is conceivable that the Commonwealth could diminish the effect of Gowans' good character evidence by rehashing adverse evidence once again. Further, the fact that the jury deliberated for only five minutes before returning the maximum sentence suggests that the jury would not have been swayed by the basic good character evidence available.

For the foregoing reasons, I agree with the Magistrate Judge that the effect of the mitigation evidence Gowans proposes is purely speculative. While the likelihood of a different result is conceivable, it is not substantial in light of the circumstances. Consequently, we conclude that it was not unreasonable for the Kentucky Court of Appeals to find that Gowans did not establish that there was a reasonable probability that the outcome of the proceeding would have been different even had counsel presented the mitigation evidence.

### III. No Certificate of Appealability to Issue

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order for a certificate to issue, Petitioner must be able to show that reasonable jurists could find in his favor, and the "question is

the debatability of the underlying federal constitutional claim, not the resolution of that debate." *Miller-El v. Cockrell*, 537 U.S. 322, 342 (2003).

In this case, reasonable jurists would not debate the denial of Petitioner's § 2254 motion or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See id.* Accordingly, we adopt the Magistrate Judge's recommendation that a certificate of appealability be denied.

IV. **Conclusion**

For all of the foregoing reasons, the objections of Petitioner are overruled, and the Report and Recommendation of the Magistrate Judge will be accepted and adopted as the Court's own.

Accordingly, **IT IS ORDERED**:

(1)   that the Report and Recommendation of the Magistrate Judge [DE # 18] is **ACCEPTED** and **ADOPTED** as the Court's own;

(2)   that Gowans' Petition for Writ of Habeas Corpus [DE # 1] shall be **DENIED**;

(3)   that no certificate of appealability shall issue from this Court.

This the 13th day of August, 2012.



Signed By:
Joseph M. Hood
Senior U.S. District Judge